UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
EVAN HARRIS,

                    Plaintiff,

-against-

STATE OF NEW YORK,
OFFICE OF NEW YORK STATE
COMPTROLLER, LAWRENCE SCHANTZ,
and ROBERT TAMBINI,

                    Defendants.
└─────────────────────────────────────────┘
```

No. 20-CV-8827 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant New York State Office of the

State Comptroller's[1] ("OSC"), Defendant Lawrence Schantz's[2]

("Schantz"), and Defendant Robert Tambini's[3] ("Tambini") motions

---

[1] (See Notice of Mot. to Dismiss Compl. as Against Def. N.Y.
State Office of the State Comptroller ("OSC MTD"), dated Apr.
15, 2021 [dkt. no. 38]; Def. N.Y. State Office of the State
Comptroller's Mem. of Law in Supp. of Its Mot. to Dismiss Compl.
("OSC Br."), dated Apr. 15, 2021 [dkt. no. 40]; Def. N.Y. State
Office of the State Comptroller's Reply Mem. of Law in Supp. of
Its Mot. to Dismiss Compl. ("OSC Reply"), dated June 10, 2021
[dkt. no. 54].)

[2] (See Notice of Mot. ("Schantz MTD"), dated Apr. 14, 2021 [dkt.
no. 35]; Def. Schantz's Mem. of Law in Supp. of His Mot. for
Dismissal of Compl. ("Schantz Br."), dated Apr. 14, 2021 [dkt.
no. 37]; Def. Schantz's Reply Mem. of Law in Supp. of His Mot.
to Dismiss Compl. ("Schantz Reply"), dated June 11, 2021 [dkt.
no. 56].)

[3] (See Def. Robert Tambini's Notice of Mot. to Dismiss Compl.
("Tambini MTD"), dated Apr. 16, 2021 [dkt. no. 41]; Def. Robert
Tambini's Mem. of Law in Supp. of His Mot. to Dismiss Compl.
("Tambini Br."), dated Apr. 16, 2021 [dkt. no. 42]; Def. Robert
Tambini's Reply Mem. of Law in Further Supp. of His Mot. to
Dismiss ("Tambini Reply"), dated June 11, 2021 [dkt. no. 55].)

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[4]
Plaintiff Evan Harris ("Harris") opposes each motion.[5]  The Court
assumes the parties' familiarity with the facts of the case.[6]
For the reasons set forth below, OSC's motion to dismiss is
GRANTED in part and DENIED in part, Schantz's motion to dismiss
is GRANTED in part and DENIED in part, and Tambini's motion to
dismiss is GRANTED in part and DENIED in part.

I.   **Procedural Background**

Plaintiff allegedly filed a Charge of Discrimination with
the Equal Employment Opportunity Commission ("EEOC") on December
23, 2019.[7]  On or about July 27, 2020, Plaintiff received a
Notice of Right to Sue letter from the EEOC.  (Compl. ¶ 12.)
Plaintiff then commenced the instant action against the State,
OSC, Schantz, and Tambini on October 22, 2020.[8]  (See Compl.)
Schantz, OSC, and Tambini moved to dismiss the Complaint on
April 14, 15, and 16, 2021, respectively.  (See Schantz MTD;

---

[4] OSC also moves to dismiss pursuant to Federal Rules of Civil
Procedure 12(b)(1), 12(b)(2), and 12(b)(5).  (See OSC MTD.)
[5] (See Pl's. Mem. of Law in Opp'n to Mots. to Dismiss Pursuant to
Fed. R. Civ. P. 12 Submitted by Defs. Office of N.Y. State
Comptroller, Lawrence Schantz, and Robert Tambini ("Pl's.
Opp."), dated May 21, 2021 [dkt. no. 49].)
[6] (See Opinion and Order, dated February 14, 2022 [dkt. no. 57].)
[7] (Complaint ("Compl."), dated Oct. 22, 2020 [dkt. no. 1] ¶ 11.)
[8] Plaintiff alleges that the instant action commenced within 90
days of receipt of the EEOC's Notice of the Right to Sue letter,
as required by law.  See Williams v. Salvation Army, 108 F.
Supp. 2d 303, 307 (S.D.N.Y. 2000) ("Title VII actions must be
commenced within 90 days of receipt of a Notice of the Right to
Sue from the EEOC.").

Schantz Br.; Tambini MTD; Tambini Br.; OSC MTD; OSC Br.)
Plaintiff opposes Defendants' motions.  (See Pl's. Opp. at 1.)

II.  **Legal Standards**

In this case, the Court is presented with three grounds
which may warrant dismissal of the Complaint: (1) insufficient
service of process pursuant to Fed. R. Civ. P. 12(b)(5);
(2) lack of personal jurisdiction pursuant to Fed. R. Civ.
P. 12(b)(2); and (3) failure to state a claim upon which relief
may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  The Court
addresses the standard for each section of Rule 12(b) in turn.

a. **Rule 12(b)(5)**

"Federal Rule of Civil Procedure Rule 12(b)(5) provides for
dismissal of an action if service of process was not timely
effected in accordance with Federal Rule of Civil
Procedure 4(m)."  AIG Managed Mkt. Neutral Fund v. Askin Cap.
Mgmt., L.P., 197 F.R.D. 104, 107 (S.D.N.Y. 2000).  In
considering a Rule 12(b)(5) motion, "a court must look[] to
matters outside the complaint to determine whether it has
jurisdiction."  George v. Pro. Disposables Int'l, Inc. 221 F.
Supp. 3d 428, 432 (S.D.N.Y. 2016) (quoting Cassano v. Altshuler,
186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)).  Once a defendant
moves to dismiss under Rule 12(b)(5), "the plaintiff bears the
burden of establishing that service was sufficient."  Khan v.
Khan, 360 F. App'x 202, 203 (2d Cir. 2010) (citing Burda Media,

3

Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)) (citation omitted).  "A court analyzes a Rule 12(b)(5) motion to dismiss for insufficient service of process by looking to Rule 4, which 'governs the content, issuance, and service of a summons.'" United States ex rel. Weiner v. Siemens AG, No. 1:12-CV-01466-ALC, 2021 WL 3544718, at *2 (S.D.N.Y. Aug. 10, 2021)(quoting DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010)).  "Federal Rule of Civil Procedure 4(m) governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected." Zapata v. City of New York, 502 F.3d 192, 195 (2d Cir. 2007), cert. denied, 552 U.S. 1243 (2008).  Rule 4(m) provides in relevant part that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service of an appropriate period.

Fed. R. Civ. P. 4(m).

If a plaintiff cannot establish that service was timely, the court must dismiss the action without prejudice unless the plaintiff shows "that it had good cause in not timely serving the defendant."  AIG Managed Mkt. Neutral Fund, 197 F.R.D. at 108.

4

b. **Rule 12(b)(2)**

"Under the Federal Rules of Civil Procedure, lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and insufficient service of process, Fed. R. Civ. P. 12(b)(5), are separate defenses and separate grounds upon which a court may rely in dismissing a complaint." Prokopiou v. Long Island R.R. Co., No. 06 Civ 2558, 2007 WL 1098696, at *5 (S.D.N.Y. Apr. 9, 2007); see also Albert Levine Assocs., Inc. v. E.H. Hudson, 43 F.R.D. 392, 393 (S.D.N.Y. 1967) ("[O]btaining personal jurisdiction and making service of process, although closely related, are not synonymous.").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Prokopiou, 2007 WL 1098696, at *5 (quoting Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). "[T]he proper provision to challenge 'the mode of delivery or the lack of delivery of the summons and complaint' is Fed. R. Civ. P. 12(b)(5)." Prokopiou, 2007 WL 1098696, at *5 (citing Bellis v. Tokio Marine and Fire Ins. Co., No. 93 CIV. 6549, 2002 WL 193149, at *15 (S.D.N.Y. Feb. 7, 2002)).

c. **Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). That "standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that
a defendant has acted unlawfully." Palin v. N.Y. Times Co.,
940 F.3d 804, 810 (2d Cir. 2019) (quoting Iqbal, 556 U.S. at
678). Evaluating "whether a complaint states a plausible claim
for relief" is "a context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the court "accept[s]
as true all factual allegations and draw[s] from them all
reasonable inferences." Dane v. UnitedHealthcare Ins. Co.,
974 F.3d 183, 188 (2d Cir. 2020). It is not required, however,
"to credit conclusory allegations or legal conclusions couched
as factual allegations." Id. (ellipsis omitted) (quoting
Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014). "Accordingly,
threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
Nielsen, 746 F.3d at 62 (cleaned up). "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and a "better pleading will not cure [them,]" repleading may be "futile." Id.

III. **Discussion**

a. **Subject Matter Jurisdiction and Exhaustion of Administrative Remedies**

Defendant OSC argues that this Court should dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) because Plaintiff did not attach a copy of the EEOC's Notice of Right to Sue letter to the Complaint. (OSC Br. at 16.) OSC claims that "Title VII requires that the EEOC Right To Sue Letter be filed with the complaint showing that plaintiff exhausted his administrative remedies." (Id.) Plaintiff opposes OSC's position, arguing that neither the statutory language of Title VII nor guidance from the EEOC supports this requirement. (Pl.'s Opp. at 33.) The Court first analyzes Plaintiff's

7

argument as a lack of subject matter jurisdiction pursuant to
Fed. R. Civ. P. 12(b)(1) and then as a failure to state a claim
pursuant to Fed. R. Civ. P. 12(b)(6).

It is well established that "[a]s a condition precedent to
a federal claim under Title VII, a plaintiff must show that he
exhausted his administrative remedies provided by the EEOC."
Guy v. MTA N.Y.C. Transit, 407 F. Supp. 3d 183, 192 (E.D.N.Y.
2016). "The weight of precedent demonstrates that
administrative exhaustion is not a jurisdictional requirement;
rather, it is merely a precondition of suit and, accordingly, it
is subject to equitable defenses." Fowlkes v. Ironworkers Loc.
40, 790 F.3d 378, 384 (2d Cir. 2015). "The administrative
exhaustion requirement applies to pro se and counseled
plaintiffs alike." Id.

Plaintiff's interpretation of Coleman v. Olinski, No. 5:16-
CV-0838, 2016 WL 11265984, at *4 (N.D.N.Y July 29, 2016), report
and recommendation adopted, 2017 WL 752182 (N.D.N.Y. Feb. 27,
2017) is misplaced. See Coleman, 2016 WL 11265984, at *4. In
Coleman, the court merely restated established precedent that a
plaintiff must plead or provide evidence in a Title VII
complaint that he or she received a Right to Sue letter from the
EEOC. Id. at *4 n.5. Because the plaintiff neither pled nor
attached the EEOC's Right to Sue letter to the complaint, among
other reasons, the court in Coleman dismissed the plaintiff's

8

Title VII complaint.[9]  Id.  Here, Plaintiff alleged in the "Exhaustion of Administrative Remedies" section of the Complaint that "[t]he EEOC issued Right-To-Sue letters to each Plaintiff on or about July 27, 2020."  (Compl. ¶ 12.)  As Plaintiff filed the Complaint within 90 days of receiving the EEOC's Notice of Right to Sue letter, (id. ¶ 13.), the Court finds that, at this stage, that Plaintiff exhausted his administrative remedies.

OSC's argument that Plaintiff failed to state a claim of exhaustion of administrative remedies because Plaintiff did not attach a copy of the EEOC Notice of Right to Sue letter to the Complaint similarly fails.  (See OSC Br. at 16–17.)  OSC does not carry its burden of proof to show that Plaintiff failed to plead sufficient facts that he exhausted his administrative remedies.  See Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense.").  OSC only cites to Coleman in support of

---

[9] Plaintiff's interpretation of Briggs v. Women in Need, Inc., No. 10-CV-02265, 2010 WL 2076981 (E.D.N.Y. May 24, 2010) is similarly misplaced.  (See OSC Reply at 14.)  In Briggs, the court directed plaintiff to provide "a copy of the 'right to sue' notice from the EEOC" because plaintiff had only pled when she filed her administrative charge with the EEOC.  Briggs, 2010 WL 2076981, at *2-*3.  For the same reasons, Johnson v. Xylem Inc., 1:19-CV-00130, 2020 WL 1963125 (W.D.N.Y. Apr. 16, 2020) is unpersuasive as the court dismissed plaintiff's Title VII and ADA claims because plaintiff failed to allege that he received a Right to Sue letter from the EEOC, not because he failed to attach his Right to Sue letter to the complaint.

its position.  (See OSC Br. at 16.)  However, for the reasons
stated above, the Court disagrees with Plaintiff's
interpretation of Coleman.  OSC acknowledges that (1) "on
October 22, 2020, plaintiff filed a formal Charge of
Discrimination with the [EEOC] that the EEOC stamped "DATE
RECEIVED" on December 23, 2019;" (2) in the Charge of
Discrimination, "[P]laintiff alleged that "in violation of Title
VII, he had been subjected to sexual discrimination and
retaliation during his employment with OSC;" and (3) on July 27,
2020, "Plaintiff received his Notice of Right To Sue Letter from
the EEOC." (OSC Br. at 1-2.)  Plaintiff argues that "[t]here is
no bootstrapping of additional claims" to support a failure to
exhaust administrative remedies because Plaintiff's complaint
alleged claims identical to those in the Charge of
Discrimination.  (See Pl.'s Opp. at 35.)  The Court agrees.
Because Plaintiff need only plead or provide evidence in the
complaint that he received a Right to Sue letter from the EEOC,
the Court finds that, at this stage, Plaintiff adequately pled
that he exhausted his administrative remedies.

Accordingly, Defendant OSC's motion to dismiss the
complaint pursuant to Fed. R. Civ. P. 12(b)(1) is denied.  OSC's
motion to dismiss the complaint pursuant to Fed. R. Civ. P.
12(b)(6) for failure to state a claim of exhaustion of
administrative remedies is similarly denied.

b. **Service of Process on OSC**

Defendant OSC's motion to dismiss the complaint for insufficient service of process pursuant to Rule 12(b)(5) presents two questions: (1) Did Plaintiff timely effect service on OSC when it delivered a summons for OSC, a copy of the complaint, and this Court's individual rules to the New York State Attorney General's Office on December 4, 2020 in compliance with C.P.L.R. § 307(1); and (2) if Plaintiff's service of process was defective, do the circumstances warrant excusing the defective service and extending Plaintiff's time to serve OSC properly such that Plaintiff's service on OSC by certified mail pursuant to C.P.L.R. § 307(2) on February 11, 2021 is considered timely?  The Court addresses each argument in turn.

i. **Timeliness of Service.**

The parties do not dispute the timeline of events.  On October 22, 2020, Plaintiff commenced the instant action by filing the complaint.  (See Compl. at 24.)  Plaintiff served a summons for the "Office of the New York State Comptroller," among other items, that was delivered to the New York State Attorney General's Office on December 4, 2020.  (See dkt. no. 12; Pl.'s Opp. at 38.)  Plaintiff alleges that OSC first notified Plaintiff of alleged deficient service on February 9, 2021.  (See dkt. no. 16 at 1; Pl.'s Opp. at 41.)  Three days

11

later, on February 11, 2021, Plaintiff served OSC pursuant to
C.P.L.R. § 307(2) via certified mail.  (See dkt. no. 48 at 1;
OSC Br. at 5; Pl.'s Opp. at 41.)  OSC received a copy of the
summons and complaint on February 17, 2021.  (See dkt. no. 39
¶ 3, Ex. A; OSC Br. at 5; Pl.'s Opp. at 41.)

The parties dispute whether Plaintiff timely served OSC.
Rule 4(m) required Plaintiff to effect service on OSC by January
20, 2021.  See Fed. R. Civ. P. 4(m).  Plaintiff argues that he
complied with Rule 4(m) by serving OSC on December 4, 2020, in
accordance with C.P.L.R. § 307(1).  (Pl.'s Opp. at 38.)  Section
307(1) of the New York Civil Practice Law and Rules provides
that "[p]ersonal service upon the state shall be made by
delivering the summons to an assistant attorney-general at an
office of the attorney-general or to the attorney-general within
the state."  N.Y. C.P.L.R. § 307(1) (McKinney 2012).  In
opposition, OSC argues that because it is a state agency,
Plaintiff was required to effect service in accordance with
C.P.L.R. § 307(2).  (See OSC Br. at 6 n.4; OSC Reply at 4.)
Section 307(2) of the New York Civil Practice Law and Rules
provides two methods to effect service upon a state agency:
(1) by "delivering the summons to such officer or to the chief
executive officer of such agency or to a person designated by
such chief executive office to receive service;" or (2) "by
mailing the summons by certified mail, return receipt requested,

to such officer or to the chief executive officer of such
agency, and by personal service upon the state in the manner
provided by [C.P.L.R. § 307(1)]."  N.Y. C.P.L.R. § 307(2).

Plaintiff argues that OSC's position "is undermined by
assertions made by the New York State Attorney General's Office
in this case on behalf of Defendant State of New York."  (Pl.'s
Opp. at 39.)  The Court disagrees.  In a letter to the Court
dated December 21, 2020, the Attorney General's Office
explicitly stated that it "represents the State of New York"
before requesting an extension to respond to the complaint.
(See dkt. no. 10.)  In the same letter, the Attorney General's
Office requested "additional time to resolve potential issues of
representation among the named defendants."  (Id.)  As OSC
contends, this request was solely for the purpose of determining
potential issues of representation among the named defendants,
not regarding the propriety of service of each defendant.  (See
OSC Reply at 5.)  Plaintiff's reference to the Office of the
Attorney General's letter dated February 11, 2021, is similarly
unpersuasive.  (See Pl's. Opp. at 38.)  Although the letter
states that the Attorney General's Office "requests additional
time for defendants to respond to the Complaint since we are
sorting out further issues relating to representation of
defendants," the sentence also contains a footnote stating that
"[b]ased on information we have received, Defendant the Office

13

of the State Comptroller was not properly served as of the time this letter is filed." (Dkt. no. 14.) Thus, the Attorney General's Office acknowledged to the Court that OSC required separate service of process. Finally, Plaintiff includes the Office of the Attorney General's argument that the State of New York (the "State") is redundant of OSC as support for why Plaintiff's service under C.P.L.R. § 307(1) is sufficient. (See Pl.'s Opp. at 39.) The Court disagrees with Plaintiff's interpretation. Whether or not the State is redundant of OSC for purposes of relief does not alter Plaintiff's service obligations on OSC.

The Court agrees with OSC that OSC is a state agency requiring service in accordance with C.P.L.R. § 307(2). Blasio v. N.Y. State Dep't of Corr. Servs., No. 04-CV-653S, 2005 WL 2133601 (W.D.N.Y. Aug. 31, 2005) is comparable. In Blasio, the plaintiff personally delivered the complaint against the defendant state agencies (the New York State Department of Correctional Services, the New York State Department of Civil Service, and OSC) to the Office of the New York State Attorney General in Buffalo, New York. Id. at *5. In Blasio, the court granted defendants' motion to dismiss the complaint without prejudice for insufficient service of process because plaintiff "failed to properly serve Defendants in the manner prescribed for service on a state agency as specified in N.Y. C.P.L.R.

14

§ 307(2)."  Id.  Thus, to comply with Rule 4(m) and C.P.L.R.
§ 307(2), Plaintiff was required to effect service by January
20, 2021, on both the Attorney General and OSC.  Plaintiff
timely served the Attorney General.  Unlike in Blasio, Plaintiff
here served OSC in accordance with C.P.L.R. § 307(2) on February
11, 2021.  (See dkt. no. 48 at 1; OSC Br. at 5; Pl.'s Opp. at
41.)  However, Plaintiff's proper service occurred 22 days after
the expiration of Rule 4(m)'s service deadline on January 20,
2021.  (See OSC Br. at 7.)

Accordingly, Plaintiff's service of process on OSC was
untimely.  The Court now assesses whether circumstances warrant
excusing Plaintiff's defective service.

### ii. **Good Cause Exception.**

Having determined that Plaintiff's service of process on
OSC was untimely, the Court must dismiss the complaint against
OSC without prejudice unless Plaintiff demonstrates that he had
good cause for failing to serve OSC within the 90-day period
pursuant to Rule 4(m) and C.P.L.R. § 307(2).  Plaintiff's
arguments for why good cause exists largely mirror his arguments
for why service on OSC was timely.  Plaintiff contends that good
cause exists because he timely served the State pursuant to
C.P.L.R. § 307(1) and that until OSC objected to improper
service on February 9, 2021, the State provisionally represented
Defendants.  (See Pl.'s Opp. at 40-41; dkt. no. 14.)  In

15

opposition, OSC argues that Plaintiff's erroneous attempt to serve OSC by properly serving the State is insufficient to establish good cause as is Plaintiff's reliance upon the State's statements to the Court regarding named defendants other than the State prior to February 11, 2021.  (See OSC Br. at 7.)

Good cause is "found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control." Siemens AG, 2021 WL 3544718, at *2.  "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay.  DeLuca, 695 F. Supp. 2d at 66.

Plaintiff's mistaken reliance on serving OSC by serving the State alone is insufficient to demonstrate good cause.  See Siemens AG, 2021 WL 3544718, at *5 ("An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." (quoting E. Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505 (S.D.N.Y. 1999))  Based on the undisputed facts, the Court is not persuaded that Plaintiff exercised "reasonable efforts and diligence" to ensure timely service on OSC pursuant to C.P.L.R. § 307(2).  See id. at *5. In reaching this determination, the Court considered the following facts: (1) Plaintiff is represented by counsel who demonstrated proper service under C.P.L.R. § 307(2) when

16

Plaintiff sent the summons and complaint via certified mail to the Comptroller on February 11, 2021, (see OSC Br. at 7); (2) OSC neither waived service of process nor authorized the Attorney General to accept service on its behalf in this action, (see id. at 8; dkt. no. 16); (3) After learning of OSC's objections to service, Plaintiff did not ask OSC for an extension pursuant to Rule 4(d)(1),[10] (OSC Br. at 8); and (4) Plaintiff did not apply to the Court for an extension to serve OSC according to C.P.L.R. § 307(2).  (Id.)

Accordingly, good cause does not exist for this Court to excuse Plaintiff's defective service.

### iii. **Judicial Discretionary Extension.**

Even in the absence of good cause, the Court may grant a discretionary extension so that Plaintiff's service on OSC by certified mail on February 11, 2021, was timely.  See Esqueda v. NYU Langone Hosps., No. 20-CV-6697 (VSB), 2021 WL 4340731, at *2 (S.D.N.Y. Sept. 23, 2021) (quoting Zapata v. City of New York, 502 F.3d 192, 197-98 (2d Cir. 2007)) ("[A] district court may grant an extension in the absence of good cause, but it is not required to do so."); Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, at *420 (S.D.N.Y. 2013) ("Where a plaintiff has not

---

[10] The Court acknowledges that upon receiving OSC's objection to Plaintiff's service, Plaintiff asked OSC to waive strict compliance with C.P.L.R. § 307(2).  (See Pl.'s Opp. at 41; dkt. no. 16.)

shown good cause for his failure to effect service within the
[90] day-period provided by Rule 4(m), the decision of whether
to grant an extension, and the criteria for that decision, are
left to the sound discretion of the district court." (citation
omitted)).  Where "good cause is lacking, but the dismissal
without prejudice in combination with the statute of limitations
would result in a dismissal <u>with</u> prejudice, . . . the district
court [should] weigh[] the impact that a dismissal or extension
would have on the parties."  <u>Zapata</u>, 502 F.3d at 197.

     "In determining whether a discretionary extension is
appropriate in the absence of good cause, a court considers the
following four factors: (1) whether any applicable statutes of
limitations would bar the action once refiled; (2) whether the
defendant had actual notice of the claims asserted in the
complaint; (3) whether defendant attempted to conceal the defect
in service; and (4) whether defendant would be prejudiced by
extending plaintiff's time for service."  <u>DeLuca</u>, 695 F. Supp.
2d at 66.

     The parties primarily dispute the first factor.  With
respect to this factor, "courts often consider the fact that the
statute of limitations has run on a claim as favoring the
plaintiff."  <u>Vaher</u>, 916 F. Supp. 2d at 420.  As previously
discussed, a plaintiff must file a Title VII complaint within 90
days of receiving the EEOC's Right to Sue Letter.  <u>See</u> 42 U.S.C.

18

§ 2000e-5(f)(1).  Although filing a complaint tolls Title VII's statute of limitations, failing to effect service of the summons within 90 days in accordance with Rule 4(m) ends the tolling period and resumes Title VII's statute of limitations.  See Frasca v. United States, 921 F.2d 450, 453 (2d Cir. 1990); Clyburne v. Center for Comprehensive Health Practice, Inc., No. 04 Civ. 6695 (LTS) (DFE), 2006 WL 1559238, at *3 (S.D.N.Y. June 5, 2006).

OSC argues that it would be futile for this Court to extend Plaintiff's time to serve the summons and complaint "because the complaint as against defendant OSC is time-barred under 42 U.S.C. § 2000e-5(f)(1) and must be dismissed."  (OSC Br. at 9.) Plaintiff does not dispute that "if he is required to re-serve Defendant OSC, that effort would be futile because his claims would be time-barred."  (Pl.'s Opp. at 43.)  However, Plaintiff argues that the fact that the statute of limitations has run on Plaintiff's claim favors a discretionary extension.  (See id. at 42-43.)

Here, Plaintiff received a Notice of Right to Sue letter from the EEOC on July 27, 2020.  (Compl. ¶ 12.)  Plaintiff filed his complaint against the State, OSC, Schantz, and Tambini on October 22, 2020, six days short of the statutory deadline. (See Compl.)  Once Plaintiff filed his complaint, Title VII's statute of limitations was tolled on October 22, 2020, for 90 days.

However, the statute of limitations resumed running on
January 20, 2021, with six days before it expired on January 26,
2021.  (See OSC Br. at 10.)  Plaintiff did not properly serve
OSC until February 11, 2021, sixteen days after Plaintiff's
Title VII statute of limitations expired.  (See dkt. no. 48 at
1.)  OSC argues that once Plaintiff failed to serve OSC by
January 26, 2021, Plaintiff is time barred from further suit
against OSC.  (See OSC Br. at 10.)  However, given the fact that
the statute of limitations has run on Plaintiff's claim, the
Court finds that the first factor favors Plaintiff.

The Court also finds that the second factor favors
Plaintiff.  The Court agrees with Plaintiff that OSC had actual
notice of the claims asserted in the complaint once Plaintiff
served a summons and complaint on OSC by certified mail on
February 11, 2021.  (See Pl.'s Opp. at 43; dkt. no. 48.)  For
purposes of this analysis, the Court need not determine whether
OSC had actual notice when Plaintiff served OSC through the
Attorney General's Office on December 4, 2020.

The third factor weighs against Plaintiff as the Court is
not persuaded that OSC attempted to conceal Plaintiff's
defective service.  First, the requirements of C.P.L.R. § 307(2)
are unambiguous and Plaintiff's mistaken reliance on C.P.L.R.
§ 307(1) does not mean that OSC attempted to conceal Plaintiff's
defective service.  Nor is the fact that OSC did not notify

Plaintiff of its objection to service until February 9, 2021,
evidence that OSC attempted to conceal Plaintiff's defective
service, as prior to February 2021, the State communicated to
the Court that it was resolving potential issues of
representation.

Finally, with respect to the final factor, "extending the
service period beyond the statute of limitations period for the
action imposes a corresponding prejudice on" OSC.  Vaher, 916 F.
Supp. 2d at 421.  However, unlike in Vaher where the delay was
lengthy and prolonged by Plaintiff's lack of diligence, see id.,
here the Court need only extend the statute of limitations
period sixteen days after Plaintiff's Title VII statute of
limitations expired and Plaintiff served OSC pursuant to
C.P.L.R. § 307(2) three days after receiving OSC's objection to
service.  (See Pl's. Opp. at 43.)  The Court further finds that
prejudice against OSC is lessened as OSC received actual notice
of Plaintiff's claims on February 11, 2021.  See Vaher, 916 F.
Supp. 2d at 421.  Thus, the fourth factor favors Plaintiff.

Accordingly, the Court finds that three factors favor
Plaintiff and one factor favors OSC.  The Second Circuit has
stated that "even if the balance of hardships favors the
plaintiff a district court may still decline to excuse a failure
to timely serve the summons and complaint where the plaintiff
fails to advance some colorable excuse for neglect."  Vaher,

916 F. Supp. 2d at 421; see also Esqueda, 2021 WL 4340731, at *2
(quoting Zapata, 502 F.3d at 197-98).  This is such a case.

However, unlike the plaintiff in Vaher who failed to offer
an explanation for untimely service, Plaintiff offered the
following explanation: he believed that his service on the
Office of the Attorney General for OSC on December 4, 2020
pursuant to C.P.L.R. § 307(1) constituted timely service of
process.  (Pl.'s Opp. at 40.)  Although insufficient to
demonstrate good cause, the Court finds that this is a
cognizable excuse for neglect.  Moreover, despite Plaintiff's
neglect to ask for an extension of service from either OSC or
the Court, the Court finds that OSC has suffered minimal
prejudice as Plaintiff properly served OSC three days after
receiving OSC's objection to service.

Accordingly, Defendant OSC's motion to dismiss the
complaint pursuant to Fed. R. Civ. P. 12(b)(5) is denied.

### c. **Personal Jurisdiction Over OSC.**

Defendant OSC also moves to dismiss the complaint as
against OSC for lack of personal jurisdiction pursuant to
Rule 12(b)(2).  (See OSC Br. at 10.)  "On a Rule 12(b)(2) motion
to dismiss for lack of personal jurisdiction, the plaintiff
bears the burden of showing that the court has jurisdiction over
the defendant."  Felix v. City of Poughkeepsie, No. 16-cv-1131,
2019 WL 5306981, at *4 (S.D.N.Y. Oct. 18, 2019).  One

precondition to asserting personal jurisdiction over a defendant is satisfying the procedural requirement of service of summons. See id.

OSC does not raise new arguments demonstrating how the Court lacks personal jurisdiction over OSC; rather, OSC relies upon the arguments it raised in moving to dismiss the complaint for improper service of process pursuant to Rule 12(b)(5).  (See OSC Br. at 10-11.)  OSC cites to Felix for the proposition that the court lacked personal jurisdiction over the defendant because the plaintiff did not properly serve the defendant with the summons.  (Id.; Felix, 2019 WL 5306981, at *5.)  Plaintiff counters, arguing that the Court obtained jurisdiction over OSC when Plaintiff served by certified mail a copy of the summons and complaint on the Comptroller.  (See Pl.'s Opp. at 47.)  The Court agrees with Plaintiff.  Plaintiff properly served a summons and complaint on OSC by certified mail on February 11, 2021.  (See dkt. no. 48.)  Thus, the Court, at this stage, has personal jurisdiction over OSC.

Accordingly, OSC's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) is denied.

### d. **Plaintiff's Hostile Work Environment Claims**

#### i. **Against OSC Under Title VII**

Defendant OSC argues that this Court should dismiss the complaint as against OSC because Plaintiff failed to file a

timely charge of discrimination with the EEOC.  (See OSC Br. at 11-12.)  Plaintiff contends that it has pled sufficient facts within Title VII's statute of limitations to survive OSC's motion.  (See Pl.'s Opp. at 25.)  The Court finds that Plaintiff's Title VII claims against OSC are time-barred.

"A Title VII plaintiff must file a charge of discrimination with the EEOC either 180 or 300 days after an 'alleged unlawful employment practice occurred.'"  Maynard v. Montefiore Med. Ctr., No. 18-CV-8877 (LAP), 2021 WL 396700, at *9 (S.D.N.Y. Feb. 4, 2021) (quoting 42 U.S.C. § 2000e-5(e)(1)).  "[I]n states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the [EEOC] is 300 days."  Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126 (2d Cir. 2010) (quoting Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  While the statute of limitations is "an affirmative defense that a defendant must plead and prove[,] . . . a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

In this case, Plaintiff filed a Charge of Discrimination
with the EEOC on December 23, 2019.  (See Compl. ¶ 11.)  Thus,
Plaintiff may only pursue acts that occurred between February 26
and December 23, 2019.  However, it is plain on the face of the
complaint that Plaintiff's hostile work environment allegations
against OSC employees Tambini[11] and Schantz[12] occurred over 300
days before December 23, 2019.[13]

---

[11] Plaintiff alleges that "[b]y late February 2019, [his
relationship with Tambini] was so bad that when Tambini went on
vacation, he did not even tell Harris he would be out for the
week." (Compl. ¶ 40.)  While it is possible that this event
occurred on or after February 26, 2019, this act relates to
Plaintiff's retaliation claim.  Similarly, Plaintiff's
allegation that he "complained to Tambini that he was aware he
was being ignored because he had urged Tambini to stop engaging
in sexist misconduct in the office, which occurred in or about
late February 2019" also relates to Plaintiff's retaliation
claim, not his hostile work environment claim.  (Id. ¶ 67.)
[12] Plaintiff's allegation that he sent Schantz an e-mail "a day
or two before" February 22, 2019 "to ask about Tambini's
whereabouts" is untimely. (Compl. ¶ 46.)  Plaintiff does not
allege how Schantz responded to his e-mail, just that Tambini
told Plaintiff that Schantz "did not want to receive direct
communications" from him. (Id. ¶ 47.)  Regardless of whether
Schantz responded, Plaintiff's allegations pertain to his
retaliation claim, not his hostile work environment claim.
[13] As OSC states, "[a]s for Mr. Tambini, the last event involving
the sexually hostile work environment that plaintiff identifies
in his Complaint is alleged to have occurred in or about January 2019."
(OSC Br. at 13.)  And for Schantz, "no events relating to a
hostile work environment could have occurred after December 27,
2018" because that is when Plaintiff stopped communicating with
Schantz daily.  (Id.)  Plaintiff also alleges that in or about
January 2019, "Plaintiff 'de-friended' Schantz on social media
and told Schantz he no longer wanted to interact with him
anymore."  (Compl. ¶ 53.)

In opposition, Plaintiff argues that OSC Human Resources manager Rae Ellen Burke's ("Burke") conversation with Plaintiff on March 4, 2019, was a timely hostile work environment event sufficient to support a continuing violation claim. (See Pl.'s Opp. at 25.) The Court first analyzes whether Burke's March 4, 2019 statements relate to Plaintiff's hostile work environment claim; then, the Court analyzes whether Plaintiff's claim of hostile work environment is timely under the continuing violation doctrine.

Plaintiff argues that "a reasonable person could infer that Burke's view of Plaintiff [on March 4, 2019] was informed by an illegal gender stereotype and thus part of the hostile work environment Harris was subjected to at OSC."[14] (Pl.'s Opp. at 25.) OSC contends that Burke's alleged statements to Plaintiff on March 4, 2019, pertain only to Plaintiff's claim of retaliation. (See OSC Reply at 9.)

---

[14] Plaintiff does not identify which of Burke's comments were informed by an illegal stereotype. However, Plaintiff alleges that "Burke made dismissive comments about Plaintiff's allegations regarding Tambini's retaliatory treatment, claiming that she had to arrange the holiday party for her office." (Compl. ¶ 75.) Taking Plaintiff's claim as true, the Court does not find that this statement contains a reference to gender stereotyping, as Burke-the opposite sex of Plaintiff-empathized with Plaintiff on having to plan a work event. Moreover, a stray remark, such as this one, "is insufficient to support a claim for hostile work environment." Jowers v. Fam. Dollar Stores, Inc., No. 09 Civ. 2620, 2010 WL 3528978, at *4 (S.D.N.Y. Aug. 16, 2010).

The Court agrees with OSC.  Taking Plaintiff's claims as true, Plaintiff does not allege that on March 4, 2019, Burke made any statements as to his gender or gender stereotyping. Rather, Plaintiff describes that conversation in a generalized manner, stating, "Burke's demeanor did not demonstrate any concern about Plaintiff's allegations regarding Schantz's mistreatment.  She made Harris feel like he was blowing the situation up and out of proportion."[15]  (Compl. ¶ 73.)  The only specific statement Plaintiff attributes to Burke in that conversation is "Good, then [Tambini's] harassment stopped." (Id. ¶ 77.)  Because that statement relates to neither Plaintiff's gender nor gender stereotypes, the Court finds that Burke's March 4, 2019 statements do not constitute a timely hostile work environment event.

The only remaining event that could implicate the continuing violation doctrine is Plaintiff's alleged termination

---

[15] In arguing that he pled sufficient facts to state hostile work environment claims under Section 1983 and NYSHRL against Defendants Tambini and Schantz, Plaintiff contends that "a reasonable assessment of Burke's treatment of Harris [on March 4, 2019] is that she downplayed the seriousness of the misconduct because she viewed the situation through the lens of the gender stereotype that 'real men' are not bothered by harassment."  (Pl.'s Opp. at 19.)  Taking Plaintiff's allegations as true, the Court disagrees with Plaintiff's conclusion.  There are other, non-gendered explanations for why Burke's demeanor did not demonstrate concern about Plaintiff's allegations regarding Schantz's alleged mistreatment.

on March 4, 2019.[16]  "[C]ourts of this Circuit have generally
been loath to invoke the continuing violation doctrine and will
apply it only upon a showing of compelling circumstances."
Percy v. New York (Hudson Valley DDSO), 264 F. Supp. 3d 574, 582
(S.D.N.Y. 2017) (quoting Little v. Nat'l Broad. Co., 210 F.
Supp. 2d 330, 366 (S.D.N.Y 2002).  Given this limited approach,
the continuing violation exception generally applies only when a
plaintiff shows an ongoing discriminatory policy or practice.

Under the continuing violation exception, hostile work
environment claims may be "based on events outside the statute
of limitations period as long as (1) the acts occurring before
the . . . cutoff constitute part of the same actionable hostile
work environment practice, and (2) at least one act contributing
to the claim occurs within the filing period."  Percy, 264 F.
Supp. 3d at 582 (citation omitted).  However, it "is well
established that termination, whether through discharge or
resignation, is a single act, discrete in nature" to which the

---

[16] Plaintiff does not argue why the continuing violation doctrine
should apply to his hostile work environment claims against OSC;
rather, Plaintiff merely cites to Petrosino v. Bell Atl., 385
F.3d 210 (2d Cir. 2004) for the proposition that a plaintiff
need only plead one act of hostile work environment within the
statute of limitations to state a continuing violation claim.
(See Pl.'s Opp. at 26.)  The Court agrees with that proposition.
See Patterson v. County of Oneida, 375 F.3d 206, at 220 (2d Cir.
2004).  However, that does not resolve whether Plaintiff's
alleged termination is enough to state a continuing violation
claim.

continuing violation doctrine does not apply.  Id.  Discrete
instances cannot extend Title VII's statute of limitations and
revive his otherwise untimely acts.  See Velez v. New York City
Police Pension Fund Article II, 18 Civ. 1366, 2019 WL 1382884,
at *7 (S.D.N.Y. Mar. 27, 2019) ("[T]he continuing violation
doctrine does not apply to discrete unlawful acts, even if the
discrete acts were undertaken 'pursuant to a general policy that
results in other discrete acts occurring within the limitations
period.'" (citation omitted)); see also Patterson, 375 F.3d at
220 ("[T]he mere fact that an employee was dismissed within
[Title VII's] statutory period cannot be used to pull in [to the
statutory period] a time-barred discriminatory act." (cleaned
up)).  Because Plaintiff's alleged termination is a discrete
act, it cannot be considered a continuation of the alleged
gender discrimination Plaintiff contends he experienced at OSC.
Thus, the continuing violation doctrine cannot salvage
Plaintiff's untimely claims.  Accordingly, OSC's motion to
dismiss Count I of the complaint—hostile work environment based
on gender in violation of Title VII as against OSC—is granted
without prejudice.

> ii. **Against Tambini Under Section 1983 and NYSHRL**

At the outset, the Court notes that in determining whether
Plaintiff adequately stated claims under § 1983 and the New York
State Human Rights Law ("NYSHRL") against Defendant Tambini, the

Court only considers Plaintiff's allegations concerning Tambini.
The Court agrees with Defendants Tambini and Schantz that "when
a plaintiff alleges that multiple individual defendants have
engaged in uncoordinated and unplanned acts of harassment, each
defendant is only liable under § 1983 when his own actions are
independently sufficient to create a hostile work environment."
Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir. 2014); (see also
Tambini Reply at 2; Schantz Reply at 5.)  Plaintiff does not
allege that Tambini and Schantz engaged in jointly planned or
perpetrated acts of harassment against him.[17]  Thus, the Court
analyzes Plaintiff's allegations against Tambini separately from
Schantz.[18]

     To plead adequately a claim for a hostile work environment
under Title VII, § 1983,[19] and the New York State Human Rights

---

[17] Plaintiff argues that "the Court's view of whether the alleged
hostile work environment was sufficiently pled should be
informed by Harris' allegations that both Tambini and Schantz
subjected Plaintiff to comments and 'jokes' that focused on
him." (Pl.'s Opp. at 18.)  However, the Complaint does not
contain allegations of coordinated or planned jokes about
Plaintiff.  Rather, Plaintiff alleges that Tambini and Schantz
separately made sexist jokes to Plaintiff.
[18] A plaintiff may sue individual defendants in their personal
capacities under NYSHRL and NYCHRL "for acts which 'aid, abet,
incite, compel, or coerce'" actions prohibited by NYSHRL or
NYCHRL.  Lopes v. Caffe Centrale LLC, 548 F. Supp. 2d 47, 54-55
(S.D.N.Y. 2008) (citation omitted).  Here, Plaintiff alleges
that Tambini and Schantz personally incited the gender-based
harassment against Plaintiff.  (See Pl.'s Opp. at 25.)
[19] It is well established that "Title VII-based hostile work
environment claims by government employees are actionable under
§ 1983."  Raspardo, 770 F.3d at 114.

Law ("NYSHRL")[20], a plaintiff must include facts plausibly

demonstrating "that 'the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'"

Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir.

2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

(1993)).[21]  The hostile work environment test has both objective

and subjective elements.  "[T]he conduct complained of must be

severe or pervasive enough that a reasonable person would find

it hostile or abusive, and the victim must subjectively perceive

the work environment to be abusive."  Raspardo, 770 F.3d at 114;

see also McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51,

65 (S.D.N.Y. 2020) ("To survive a motion to dismiss, a plaintiff

must allege facts showing she was faced with harassment . . . of

such quality or quantity that a reasonable employee would find

the conditions of her employment altered for the worse."

(internal quotation marks and citations omitted)).  In

---

[20] "The standard for showing a hostile work environment under
Title VII, Section 1981, Section 1983, and the New York State
Human Rights Law is essentially the same."  Smith v. Town of
Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp.
2d 443, 451 (E.D.N.Y. 2011).
[21] "[C]laims brought under New York State's Human Rights Law are
analytically identical to claims brought under Title VII."
Erasmus v. Deutsche Bank Ams. Holding Corp., 15 Civ. 1398, 2015
WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015).

adjudicating a defendant's motion under Rule 12(b)(6), "courts must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment." Lenart v. Coach, Inc., 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (citation omitted).

"In determining whether a plaintiff suffered a hostile work environment, [the court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321 (citation omitted). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Bermudez v. City of New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (citation omitted). Finally, a plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." Id. at 578 (citation omitted).

In his Complaint, Plaintiff alleges three instances of harassment by Tambini over the course of 15 months: (1) in September 2017,[22] when Tambini arranged balloons in the shape of a penis at a co-worker's retirement party; (2) at an undated office birthday party, when Tambini almost poked a co-worker with a fork and stated, "I don't want to fork you;" and (3) in January 2019, when Tambini asked Plaintiff if he intended to use a lactation room for OSC employees to masturbate.  (See Compl. ¶¶ 22-33; Tambini Reply at 2.)

The facts alleged by Plaintiff against Tambini fall short of a claim for a hostile work environment under § 1983 and NYSHRL.  The first two instances of alleged harassment were directed at other OSC employees, not Plaintiff.  Although "[d]iscriminatory conduct need not be directed at Plaintiff— derogatory comments and actions directed at others may contribute to a hostile work environment experienced by an employee," Holt v. Dynaserv Indus., Inc., 14 Civ. 8299, 2016 WL 5108205, at *8 (S.D.N.Y. Sept. 19, 2016), the Court finds that these are two isolated instances that are neither sufficiently

---

[22] Tambini argues that the Court may take judicial notice of government records which show that this retirement party occurred in December 2014, not September 2017.  (See Tambini Br. at 3-4.)  At this stage, the Court declines taking judicial notice of these documents as Exhibits E and F to Tambini's Affidavit [dkt. no. 44] are not publicly available.  Rather, they are internal records within OSC.

severe nor pervasive to alter the terms of Plaintiff's employment.

While "it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace," the Court finds that the third alleged instance of harassment by Tambini, while inappropriate, is closer to what would be described as isolated, "boorish" behavior than a "severe" incident which has been found to create a hostile work environment. Alfano, 294 F.3d at 374. Thus, the Court finds that this isolated instance of offensive conduct does not support a claim of gender-based harassment by Tambini.

Finally, the Court considers Plaintiff's allegation that "Tambini had a habit of slipping inappropriate comments into conversation by making plays on words." (Compl. ¶ 31.) This unspecified, vague allegation is insufficient to state a claim of hostile work environment against Tambini because the Court cannot determine the severity or frequency of these alleged comments. See Boza-Meade v. Rochester Housing Auth., 170 F. Supp.3d 535, 547 (W.D.N.Y. 2016) ("Vague allegations that co-workers made fun of her accent in connection with Plaintiff's pronunciation of streets, with no additional supporting factual information as to the context and frequency of this conduct, . . . do not plausibly allege conduct that is sufficiently severe so

as to alter the terms and conditions of Plaintiff's employment.").

Accordingly, Tambini's motion to dismiss Counts III and V of the complaint—hostile work environment based on gender in violation of Section 1983 and NYSHRL as against Tambini—is granted without prejudice.

### iii. **Against Tambini Under NYCHRL.**

The Court now analyzes Tambini's motion to dismiss Plaintiff's hostile work environment claim against him under the New York City Human Rights Law ("NYCHRL"). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Id. "The NYCHRL imposes liability for harassing conduct that does not qualify as 'severe or pervasive,' and 'questions of "severity" and "pervasiveness" are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." Bermudez, 783 F. Supp. 2d at 579

(quoting Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009)).

To survive a motion to dismiss under the more lenient standard in the NYCHRL, Plaintiff is required to allege "the existence of unwanted gender-based conduct" because liability under the NYCHRL is "determined by the existence of unequal treatment." Williams, 872 N.Y.S.2d at 38-39.[23]  However, courts must be mindful that NYCHRL is not a "general civility code." Id. at 40 (citation omitted); see also Bermudez v. City of New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ("[E]ven under the NYCHRL, petty, slight, or trivial inconvenience[s] are not actionable." (cleaned up)).

Plaintiff argues that while employed at OSC he "was subjected to a constant stream of comments, jokes and other misconduct that signaled he was not a 'real man' in the eyes of his supervisors because he did not engage in sexual misconduct like they did." (Pl.'s Opp. at 24.)  While Plaintiff's allegation that Tambini asked Plaintiff if he planned to use OSC's lactation room to masturbate is offensive, the Court finds that it is a petty slight and inconvenience insufficient to

---

[23] Unlike under § 1983 and NYSHRL, to prevail on a hostile work environment claim under the NYCHRL, a plaintiff "need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." Mihalik, 715 F.3d at 111 (quoting Williams, 872 N.Y.S.2d at 39).

sustain a hostile work environment claim under the NYCHRL.  (See
Compl. ¶ 33.)  The Court agrees with Tambini that the facts in
Bermudez, 783 F. Supp. 2d 560 and Wilson v. N.Y.P. Holdings,
Inc., No. 05 Civ. 10355, 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009)
are comparable.  In opposition, Plaintiff references dicta from
Williams that "[o]ne can easily imagine a single comment that
objectifies women being made in circumstances where that comment
would, for example, signal views about the role of women in the
workplace and be actionable [under NYCHRL]."  Williams, 872
N.Y.S.2d at 41 n.30.  However, taking Tambini's lactation
comment as true, the Court does not find that this comment
signals a view about Tambini's role in the workplace based on
his gender.  Although Plaintiff alleges that Tambini slipped
inappropriate comments into conversation by making plays on
words, this allegation lacks dates and specifics from which the
Court could determine whether it was unwanted gender-based
conduct directed at Plaintiff.

Accordingly, Tambini's motion to dismiss Count VII of the
Complaint—hostile work environment based on gender in violation
of NYCHRL against Tambini—is granted without prejudice.

   iv. **Against Schantz Under Section 1983 and NYSHRL.**

As a threshold issue, the Court must address whether it may
consider the exhibits attached to Defendant Schantz's
affirmation in adjudicating Schantz's motion under Rule

12(b)(6).  (See dkt. no. 36.)  Schantz argues that the Court may take judicial notice of the text strings attached as exhibits to Schantz's affirmation [dkt. no. 36 Exs. B-E] because they are incorporated by reference in the Complaint.  (See Schantz Reply at 1.)  In opposition, Plaintiff argues that Schantz's counsel, Oscar Michelen, "proffers his own testimony regarding the alleged context and content of the problematic text conversations between his client and Plaintiff that are included in the Complaint."  (Pl.'s Opp. at 8.)  The Court agrees with Schantz.

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (quoting In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013)).  The Court may take judicial notice of documents that are "integral to the complaint," such that the complaint "relies heavily upon [the documents'] terms and effect."  Palin v. N.Y. Times Co., 940 F.3d 804, 811 (2d Cir. 2019) (citation omitted).[24]  "Courts have also taken judicial

---

[24] However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).  If neither party

notice of materials in the public record, such as federal
copyright registrations, newspaper articles, and regulatory
filings—all for the limited purpose of noting what the documents
state, rather than to prove the truth of their contents." Hesse
v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 462 (S.D.N.Y.
2020) (internal quotation marks and citation omitted).

Applying these principles, the Court finds that the copies
of Schantz's and Plaintiff's text strings fall within the
recognized categories of documents that the Court may consider
on a Rule 12(b)(6) motion.  Plaintiff quoted various portions of
these text messages in the Complaint.  (See Compl. ¶¶ 56-59,
62.)  In fact, the alleged contents of these messages form the
basis of Plaintiff's claims against Schantz for hostile work
environment and retaliation under § 1983, NYSHRL, and NYCHRL.
Despite opposing their consideration, Plaintiff does not
challenge the authenticity or accuracy of the text strings.
(See Schantz Reply at 1.)  Accordingly, the Court finds it
reasonable to conclude that the text strings [dkt. no. 36, Exs.
B-E] are incorporated by reference in and integral to the
Complaint.  See Lopez-Serrano v. Rockmore, 132 F. Supp. 3d 390,

---

objects to the authenticity or accuracy of the document, then
the court may consider the full text of documents partially
quoted in a complaint.  See San Leandro Emergency Med. Grp.
Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09
(2d Cir. 1996).

400 (E.D.N.Y. 2015) (finding a copy of the parties' text
messages submitted in support of defendant's motion to dismiss
incorporated by reference and integral to the complaint).

Turning to Plaintiff's claims against Schantz, the Court
finds that Plaintiff has plausibly alleged that he suffered
"harassment . . . of such quality or quantity that a reasonable
employee would find the conditions of her employment altered for
the worse." McHenry, 510 F. Supp. at 65 (citation omitted).
The question is whether Plaintiff has sufficiently pled that
Schantz's conduct is connected to Plaintiff's membership in a
protected class.  Plaintiff's allegations related to gender rely
on Schantz's alleged offensive sexual text messages.  The Court
finds that the contents of these text messages is sufficient to
survive Schantz's motion to dismiss.

Plaintiff alleges that Schantz circulated numerous text
messages containing graphic sexual jokes and comments regarding
Plaintiff's sexual relationship with his girlfriend.  (See
Compl. ¶¶ 56-59.)  Courts have held that a defendant's
dissemination of sexually explicit content to co-workers meets
the pleading standards of Title VII, § 1983, and the NYSHRL.
See Ruiz v. City of New York, No. 14-CV-5231, 2015 WL 5146629,
at *9 (S.D.N.Y. Sept. 2, 2015) (holding that plaintiffs'
allegations that defendant sent them and other employees a photo
with the female plaintiff's face "'photoshopped' onto a naked

40

woman's body" adequately stated a hostile work environment claim under Title VII, § 1983, and NYSHRL); Gallagher v. AEG Mgmt. Brooklyn, LLC, No. 16-CV-4779, 2017 WL 2345658, at *6 (E.D.N.Y. May 30, 2017) (noting that "this Circuit had held that displays of obscene photographs and sexually offensive remarks can constitute a gender-based hostile work environment").

Accordingly, Schantz's motion to dismiss Counts III and V of the complaint—hostile work environment based on gender in violation of Section 1983 and NYSHRL as against Schantz—is denied.

### v. **Against Schantz Under NYCHRL**.

As set forth above, the "pleading standard for hostile work environment claims under the NYCHRL is more liberal than the federal and state standard, because under the NYCHRL conduct need not qualify as 'severe or pervasive' to be actionable." Ruiz, 2015 WL 5146629, at *11 (citation omitted).  For the reasons discussed above, Plaintiff has adequately pled conduct by Schantz that exceeds "petty slights and trivial inconveniences."  Williams, 872 N.Y.S.2d at 41; see also McHenry, 510 F. Supp. 3d at 70 ("[T]he allegations that [defendant] sent [plaintiff] doctored messages with an explicit photo purporting to be of her and numerous sexually explicit text messages state a claim under the NYCHRL.").  Moreover, given the sexual overtone of Schantz's text messages to

41

Plaintiff and explicit references to sexual acts with Plaintiff's girlfriend, Plaintiff has adequately alleged that his mistreatment by Schantz was the result of his gender.

Accordingly, Schantz's motion to dismiss Count VII of the Complaint—hostile work environment based on gender in violation of NYCHRL against Schantz—is denied.

### e. **Plaintiff's Retaliation Claims**

#### i. **Against OSC Under Title VII.**

##### 1. **Timeliness of Claim.**

For the same reasons as discussed above, Defendant OSC argues that Count II of the complaint-retaliation in violation of Title VII as against OSC-is limited to acts of alleged retaliation that occurred between February 26 and December 23, 2019. (See OSC Br. at 15-16; Carter v. New York City Dep't of Corr., 7 F. App'x 99, 102-03 (2d Cir. 2001) ("Under Title VII, a plaintiff must file an administrative claim within 300 days of the retaliatory conduct. . . . The 300 day limit functions as a statute of limitations, precluding consideration of events that occurred more than 300 days prior to filing an administrative complaint.").) The Court agrees. Therefore, the Court may only consider adverse actions that occurred after February 26, 2019.

OSC argues that Plaintiff only raises a single allegation of retaliation in the complaint—his termination on March 4, 2019. (See OSC Br. at 16.) Because Plaintiff's alleged

42

termination on March 4, 2019, occurred within Title VII's 300-day filing period, it is timely; however, as stated above, alleged termination is a discrete instance that cannot extend Title VII's statute of limitations and revive Plaintiff's otherwise untimely acts of retaliation.

Although Plaintiff does not directly address OSC's timeliness argument, Plaintiff alleges that he suffered retaliation for participating in protected activities on three occasions: (1) in September 2018 when Plaintiff complained to Tambini about his inappropriate sexual comments; (2) in late 2018 when Plaintiff complained to Schantz about Tambini's inappropriate sexual comments and retaliation; and (3) on March 4, 2019, when Plaintiff complained to Burke about harassment and retaliation by Tambini and Schantz and was subsequently terminated. (See Pl.'s Opp. at 26-27.) Taking Plaintiff's claims of retaliation in January[25] and February 2019[26] (prior to February 26) as true, the Court agrees with OSC that those claims are untimely. Despite finding that Plaintiff's claims of retaliation in 2018 are untimely, the Court may still consider

---

[25] Plaintiff alleges that Tambini excluded him from a project plans meeting in or around January 8, 2019. (See Compl. ¶ 38.)
[26] Plaintiff alleges that in "late February 2019," Tambini did not tell Plaintiff that he was going on vacation. (Id. ¶¶ 40-41.) Plaintiff also alleges that on February 22, 2019, Tambini gave Harris "an assignment with a deadline, suggesting that Plaintiff did not get his work done in a timely manner." (Id. ¶ 43.)

Plaintiff's participation in protected activities that predate
February 26, 2019.  Thus, Plaintiff's retaliation claim must
stand, if at all, on his termination on March 4, 2019.

Accordingly, OSC's motion to dismiss Plaintiff's
retaliation claims as against OSC, except for Plaintiff's claim
that OSC retaliated against him on March 4, 2019, is granted
without prejudice.

2. **Stating a Cause of Action.**

OSC argues that Plaintiff cannot state a claim of
retaliation because he cannot establish a causal connection
between his alleged protected activity in September 2017[27] and
his termination on March 4, 2019.  (See OSC Br. at 17-18.)  In
response, Plaintiff argues that "after he engaged in protected
activity each time, alleged retaliatory conduct immediately

---

[27] Plaintiff alleges that Tambini was promoted to Director of
Audits for OSC's OUF in September [dkt. 2018.  (See Compl. ¶ 24.)
Defendants OSC, Tambini, and Schantz oppose this representation,
and contend that Tambini was promoted in September 2017.  (See
OSC Br. at 17 n.7; Tambini Br. at 2; Schantz Br. at 2 n.1.)  OSC
argues that the Court may take judicial notice of government
records reflecting that Tambini was promoted to Director of
Audits in September 2017.  (See OSC Br. at 17 n.7.)  The Court
agrees with OSC.  The Court may consider Exhibit G to the
Affirmation of Michael Kogut [dkt. no. 39] to note what the
record states regarding Tambini's promotion to Director of
Audits for OSC's OUF because Exhibit G is a public government
record.  (See OSC Reply at 1 (noting that Exhibit G is
"submitted only to establish a date—the date on which Mr.
Tambini was promoted").)  However, the Court does not consider
Exhibit G to the Affirmation of Michael Kogut for the purpose of
proving the truth of its contents.

followed, with the last complaint resulting in his termination
of employment the same day." (Pl.'s Opp. at 30.) The Court
first addresses whether Plaintiff's allegations regarding his
complaint to Schantz on December 20, 2018, is a protected
activity under Title VII. Then, the Court analyzes whether
Plaintiff plausibly pled a causal connection between his
termination on March 4, 2019, and his participation in a
protected activity on September 2017.[28]

"Federal and state law retaliation claims are reviewed
under the burden-shifting approach of McDonnell Douglas."
Villar v. City of New York, 135 F. Supp. 3d 105, 135 (S.D.N.Y.
2015) (quoting Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d
Cir. 2013)). "To establish a presumption of retaliation at the
initial stage of a Title VII litigation, a plaintiff must
present evidence that shows '(1) participation in a protected
activity; (2) that the defendant knew of the protected activity;
(3) an adverse employment action; and (4) a causal connection
between the protected activity and the adverse employment
action.'"[29] Littlejohn, 795 F.3d at 315-16 (citation omitted);

---

[28] As stated above, the Court only considers Plaintiff's claim
that OSC retaliated against him on March 4, 2019, as Plaintiff's
claims of retaliation in 2018 are untimely.
[29] "[T]he allegations in the complaint need only give plausible
support to the reduced prima facie requirements that arise under
McDonnell Douglas in the initial phase of a Title VII
litigation." Littlejohn, 795 F.3d at 316.

see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) ("[F]or a [Title VII] retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated-or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." (citation omitted)).

OSC argues that Plaintiff's alleged complaint to Schantz on December 20, 2018 about Tambini's inappropriate comments and retaliatory treatment is not protected activity.  (See OSC Reply at 12.)  Protected activity consists of "action taken to protest or oppose discrimination prohibited by [Title VII]."  Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014); see also 42 U.S.C. § 2000e-3(a).  "It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law."  La Grande v. DeCrescente Distrib. Co., Inc., 370 F. App'x 206, 212 (2d Cir. 2010) (quoting Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)); see also Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 281 (E.D.N.Y. 2013) ("In

order to oppose sexual harassment, Plaintiff need not have filed a formal complaint as long as she complained of activity that she had a good faith, reasonable belief violated the law."). However, "[w]hen making the complaint, a plaintiff must do so in 'sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, or national origin."  Id. at 280-81; Int'l Healthcare Exch., Inc., 470 F. Supp. 2d at 357 ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").

Plaintiff has failed to allege that he engaged in protected activity on December 20, 2018. (See Compl. ¶ 62; Schantz Reply at 10.)  Plaintiff does not allege that he ever explicitly raised the issue of gender discrimination when he complained about his work to Schantz via text message on December 20, 2018. Like the plaintiff in International Healthcare Exchange, Inc., Plaintiff asserts that his complaint about having to perform secretarial work, such as setting up the office holiday party, implied that Tambini was discriminating him based on sex.  See Int'l Healthcare Exch., Inc., 470 F. Supp. 2d at 357.  However, taking Plaintiff's allegations as true, the Court does not find that Plaintiff alleged that Schantz was on notice that Plaintiff felt discriminated against by Tambini based on sex.

Accordingly, Plaintiff's complaint to Schantz on December 20, 2018, is not protected activity.

OSC argues that Plaintiff did not plausibly plead a connection between his termination on March 4, 2019, and his complaint to Tambini in September 2017.  (OSC Br. at 17–18.) The Court agrees.  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Littlejohn, 795 F.3d at 319 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)); see also Vega, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").  Plaintiff relies on showing the causal connection between his protected activity in September 2017 and his termination on March 4, 2019, indirectly, as the Complaint does not contain allegations that Tambini (or Schantz) participated

48

in discussions regarding Plaintiff's termination.[30]   Plaintiff alleges that on March 4, 2019, Burke told Plaintiff that she wanted to discuss Plaintiff's solutions to the alleged harassment with "John Traylor and Chris Gorka, Defendant Schantz's supervisors."  (Compl. ¶ 80.)

Plaintiff fails to show a causal connection indirectly because the protected activity in September 2017 was not followed "closely" by an adverse employment action.  The 18 months between Plaintiff's alleged protected activity and his termination date exceeds time frames supported by this Court to show causal connection.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (finding no causality for adverse action 20 months after protected activity and citing cases finding 3 and 4-month periods insufficient).  Thus, Plaintiff's claim for retaliation based on Plaintiff's September 2017 complaint fails.

Accordingly, only Plaintiff's claim for retaliation based on Plaintiff's complaints to Burke on March 4, 2019, and his subsequent termination survive OSC's motion to dismiss.  The

---

[30] The Court also notes that Plaintiff does not allege that either Tambini or Schantz spoke with Burke about Plaintiff prior to March 4, 2019.  While it is not clear from the Complaint how Burke decided to visit Plaintiff, the fact that "Burke asked Plaintiff what was going on" suggests that neither Tambini nor Schantz spoke with Burke prior to March 4, 2019.  (See Compl. ¶ 69.)

Court grants OSC's motion to dismiss Plaintiff's claim for retaliation against OSC for Plaintiff's complaint in September 2017 to Tambini and on December 20, 2018, to Schantz.

   ii. **Against Tambini and Schantz Under Section 1983 and NYSHRL**

  The Court now turns to whether Plaintiff plausibly alleged claims of retaliation against Tambini and Schantz under § 1983 and NYSHRL.  The same pleading standard applies to retaliation claims under Title VII, § 1983, and the NYSHRL.  See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013); Ruiz, 2015 WL 5146629, at *6.  Tambini and Schantz argue that Plaintiff's retaliation claims fail because Plaintiff cannot demonstrate a causal connection between Plaintiff's complaint to Tambini in September 2017 and Plaintiff's termination on March 4, 2019.  (See Tambini Br. at 6-7; Schantz Br. at 18-19.)  For the reasons stated above, the Court agrees with Tambini and Schantz that (1) Plaintiff fails to show a causal connection between Plaintiff's complaint to Tambini in September 2017 and his termination on March 4, 2019; and (2) Plaintiff's alleged complaint to Schantz on December 20, 2018 is not protected activity under § 1983 or NYSHRL.

  Plaintiff's complaint to Burke on March 4, 2019, cannot save Plaintiff's retaliation claims against Tambini and Schantz. Plaintiff alleges that he "alleged sufficient facts to survive a

motion to dismiss by pleading that 'the decision-maker [here, OSC] was at least influenced or encouraged to take the adverse action by a superior with knowledge of the protected activity.'" (Pl.'s Opp. at 32 (quoting Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med., No. 11 Civ. 8934, 2014 WL 896744, at *12 (S.D.N.Y. Mar. 3, 2014).)   However, the Complaint is devoid of allegations that Schantz or Tambini played a role in Plaintiff's termination.   The Complaint only alleges that "Burke said she wanted to discuss Plaintiff's proposals with John Traylor and Chris Gorka, Defendant Schantz's supervisors."   (Compl. ¶ 80.)   Accordingly, Tambini's and Schantz's motions to dismiss Counts IV and VI of the Complaint— retaliation in violation of § 1983 and NYSHRL—are granted without prejudice.[31]

> ### iii. **Against Tambini and Schantz Under NYCHRL**

Finally, the Court determines whether Plaintiff plausibly alleged claims of retaliation against Tambini and Schantz under the NYCHRL.   A prima facie case of retaliation under the NYCHRL is analogous to Title VII, § 1983, and the NYSHRL "except that the plaintiff need not prove any 'adverse' employment action; instead, he [or she] must prove that something happened that

---

[31] The Court retains supplemental jurisdiction over the remaining state and local claims because the Court finds that Plaintiff's federal retaliation claim based on his complaint to Burke on March 3, 2019 survives.   (See Tambini Br. at 21-22.)

would be reasonably likely to deter a person from engaging in protected activity." Leon v. Columbia Univ. Med. Ctr., No. 11-cv-08559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted).  For the reasons stated above, the Court finds that Plaintiff's retaliation claims against Tambini and Schantz similarly fail under the NYCHRL. Accordingly, Tambini's and Schantz's motions to dismiss Count VII of the Complaint—retaliation in violation of NYCHRL—are granted without prejudice.

IV. **Conclusion**

For the reasons stated above, OSC's motion to dismiss [dkt. no. 38] is granted in part and denied in part; Schantz's motion to dismiss [dkt. no. 35] is granted in part and denied in part; and Tambini's motion to dismiss [dkt. no. 41] is granted in part and denied in part.  Plaintiff may file an amended complaint within 30 days of this order.  The Clerk of the Court shall close the open motions [dkt. nos. 35, 38, 41].

**SO ORDERED.**

Dated:     March 17, 2022
           New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge